JOYCE ANITA TIPPITT, Petitioner-Appellee, v.
JOSEPH SALVADORE FORMOSA,
Respondent-Appellant.—462 S.W.2d 881.

Middle Section. October 30, 1970.

Certiorari Denied by Supreme Court December 21, 1970.

Lucian Dale, Nashville, for petitioner-appellee.

J. Vaulx Crockett, Nashville, for respondent-appellant.

SHRIVER, P.J.(M.S.). This is a paternity suit which was begun in the Juvenile Court of Nashville and Davidson County and, subsequently, transferred to the Circuit Court where it was heard on January 30, 1970 before Honorable John L. Uhlian, Judge of the Second Circuit Court of Davidson County, Tennessee, and a jury. It resulted in a verdict and decree that Joseph Salvadore (Tony) Formosa was the natural father of Mitzi Lorelle Tippitt, who was born out of wedlock to the petitioner, Joyce Anita Tippitt, on the 16th day of April, 1966. From the foregoing decree, respondent, Joseph Salvadore Formosa, appealed to this Court and has assigned errors.

## MOTION

Petitioner-appellee filed a motion to dismiss the appeal and affirm the decree of the Court below on the ground that appellant failed to file his Assignments of Error and Brief within the time prescribed by Rule 12 of this Court.

In response to said motion, the appellant's attorney, Mr. J. Vaulx Crockett, filed a brief to which was attached his affidavit to the effect that, by inadvertence and oversight, he filed the assignments and brief on June 5, 1970, although the extension of time for filing same expired on June 4, 1970, and that he only discovered the mistake at the time he filed the assignments and brief.

He urges that the delay was inconsequential and could not possibly have caused prejudice or inconvenience to the appellee and prays that the Court overrule the motion.

We think his explanation, by way of affidavit, is sufficient, together with the fact that there does not appear to have been any prejudice or inconvenience to the appellee by reason of the delay of one day in filing the assignments and brief; hence, the motion is overruled.

## ASSIGNMENTS OF ERROR

There are three assignments, as follows:

"I. The Court erred in insisting that the jury reach a verdict after they had announced that they could not agree and in insisting that they come back the following day after they had deliberated several hours and still stated that they could not agree and in overruling this ground of defendant's motion for a new trial.

II. The Court erred in charging the jury as to the time and expense involved which would be wasted if they did not reach a verdict and in overruling this ground of defendant's motion for a new trial.

III. The Court erred in completely recharging the jury after many hours of deliberation and in overruling this ground of defendant's motion for a new trial."

In view of the fact that there is no assignment to the effect that there is no evidence to support the verdict and judgment, it will not be necessary to recite the facts of this case in any detail.

Briefly stated, the record shows that the petitioner, Joyce Anita Tippitt, whose age is not revealed in the record, is an unmarried woman, having been divorced from a former husband on November 16, 1964 in the Circuit Court of Davidson County, Tennessee.

It is alleged in her Petition to Establish Paternity that, at the time of said petition, she resided at 114 Whitsett Road, Nashville, Tennessee, and:

"That from January, 1965 until March, 1966 the complainant engaged in sexual intercourse with the defendant on many and numerous occasions, at various times and places, and specifically in her home at 1716 Neil Terrace, where on many occasions he stayed all night long with complainant. That as a result thereof the petitioner became pregnant with a child by the defendant and the female child was born on April 16, 1966 at Baptist Hospital and was named Mitzi Lorelle Tippitt.

That the defendant is also a citizen and resident of Davidson County, Tennessee, and resides at 3408 Trimble Road in Nashville, Tennessee. That the defendant also operates a business known as Acklen Motors."

She further alleges that the defendant admitted that he was the father of the child and continued to keep company with petitioner after her pregnancy was known.

She further alleges that respondent, who is self-employed, is financially able to support said child but has refused to do so. Petitioner prays that the respondent be adjudged to be the father of the child and required to pay a reasonable amount for its support and maintenance, as well as the necessary medical expenses incurred in giving birth to the child, and that he be required to pay a reasonable attorney's fee to the solicitor of record for petitioner.

For answer to the petition, the respondent said:

"That he denies the allegations contained in the petition and demands strict proof thereof,"

which answer was signed by his attorney.

The testimony of the petitioner both on direct and cross-examination, covering many pages of the record, supports the charges in her bill.

Respondent, testifying in his own behalf, admitted his relations with the petitioner, covering a period of many months, including the time when the pregnancy and the resulting birth of the child could have occurred in the normal course of events. His defense consisted chiefly in asserting that he did not believe that it was his child and in undertaking to prove that there were at least two other men either of whom might have been the father of the child due to their association and alleged intercourse with the petitioner.

The jury, after hearing all of the evidence, found, as is hereinabove indicated, that the respondent is the father of the child.

We will now consider the Assignments of Error.

Assignments 1 and 2 both complain of the fact that the Trial Judge repeated his charge to the jury after the foreman had announced that the jury could not agree, asserting that this was error and that the defendant was prejudiced by the cumulative effect of the urging of the Court to reach a verdict, combined with the repetition of the entire charge, some of which was irrelevant to the question of preponderance which was raised by the jurors, and, further, that it was error to charge the jury as to the time and expense involved which would be wasted if they did not reach a verdict.

We have read the charge of the Court and the proceedings upon the return of the jury, when the foreman reported that they were unable to agree, and we are impressed that the original charge is correct in every respect.

At the conclusion of the charge, the Court asked counsel if there was anything else, to which both counsel replied: "Nothing further".

On returning to the courtroom, at which time the foreman announced that the jury was unable to agree, after some discussion between the Court and the jurors, the Trial Judge stated: "I'm going to give you another charge that might unhang you. I'll just give it to you now." Whereupon, he pointed out to the jury that the verdict must be unanimous, which means that it must be the conscious individual decision of each member of the jury, arrived at by him or her after due consideration of all the evidence and the law as explained by the Court. He then correctly stated to the jurors that each of them should give due consideration to the expressions and views of his or her fellow jurors and that, while it was

the duty of each juror to adhere to his or her own conscience and conscientious convictions and to not violate his or her conscience in rendering a verdict; nevertheless, it was the duty of each and every juror to agree upon a verdict if he or she could conscientiously do so. He further stated:

"I call to your attention a trial of this case has consumed part of two days, occupying the time of the court, counsel, the parties and the jury. * * * For this reason, it is highly desirable that you should reach a verdict in this case if you can conscientiously do so."

Without quoting the remainder of his additional charge, we are convinced that he did not commit error in so charging the jury.

However, counsel complains of the action of the Court in further using the same charge that he originally gave them.

We take note of the fact that the foreman, upon the returning of the jury to the courtroom after consideration following the foregoing "unhanging" charge, stated to the Court:

"We would like to hear law, Your Honor, on the preponderance of the evidence," whereupon, the Court reread the charge on preponderance and then asked: "Does that get it, that's on the preponderance of the evidence," to which the foreman replied that it was the feeling of some of the jurors that the Court said in effect that this was a very peculiar case and that they may not have seen any conclusive evidence of guilt. The following appears in the transcript:

"THE COURT: I don't remember saying anything along that line at all. Was it in the last charge?

THE FOREMAN: It was in your charge, I believe, rather than in the law that you read to us, yes sir.

THE COURT: I'll just read you this whole charge. Will that help you?

THE FOREMAN: Yes, sir."

The Court then repeated his charge.

After further deliberation, the jury reached a verdict in favor of petitioner.

In Assignment No. 3, which is substantially a repetition of Assignments 1 and 2, counsel elaborates by quoting a part of what the Trial Judge said in his original charge with respect to the period of gestation and argues that there was no evidence in this case that the period of gestation was the usual period, but rather that there might have been an extended period since the petitioner was in the hospital prior to birth on account of false labor. Counsel further argues that neither the mean nor extreme of the period of gestation are so commonly and precisely known that the Court may take judicial knowledge of them.

What the Court said in his original charge on this subject is as follows:

"You are instructed that the usual period of gestation which elapses between conception and birth of a child is approximately 280 days. This period may vary somewhat, depending upon the condition of the mother."

No Tennessee authority on this subject was cited and, upon investigation, we have found no case dealing directly with the question whether our Courts will take judicial knowledge of the period of gestation.

In 31A C.J.S. Evidence sec. 79, p. 88, it is said:

"Judicial notice will be taken of the ordinary period of gestation, and of the fact that such period is subject to many exceptions."

In support of the foregoing statement, numerous authorities are cited covering many jurisdictions in more than a dozen States of the United States.

Our investigation indicates that the great weight of authority is to the effect that our Courts can take judicial knowledge of the usual period of gestation as being approximately 280 days which, as the Court correctly stated, is subject to variation, depending on the condition of the mother.

Finding no error in the record, the assignments are overruled and the judgment of the Trial Court is affirmed.

Affirmed.

Puryear, and Todd, JJ., concur.